UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TIRON JUSTIN GRANT,

                Plaintiff,

    v.                                    Case No. 25-cv-2033-pp

DAISY CHASE, *et al.*,

                Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Plaintiff Tiron Justin Grant, who is incarcerated at Redgranite Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants had violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

## I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On February 25, 2026, the court ordered the plaintiff to pay an initial partial filing fee of $18.99. Dkt. No. 7. The court received that fee on April 9, 2026. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

<u>Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. <u>D.S. v. E. Porter C'nty Sch. Corp.</u>, 799 F.3d 793, 798 (7th Cir. 2015) (citing <u>Buchanan–Moore v. C'nty of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. <u>Cesal</u>, 851 F.3d at 720 (citing <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff sues Daisy Chase, Angela Thompson, Nurse Bertzel and Nurse Romo[1]. Dkt. No. 1 at 1. He alleges that on February 17, 2025, he went to the medical unit at Redgranite Correctional Institution for ongoing back pain. <u>Id.</u> at ¶7. Defendant Bertzel allegedly directed the plaintiff to an exam room and told him to sit on an exam table. <u>Id.</u> at ¶¶8-9. The plaintiff states that Bertzel asked him where his back hurt, and the plaintiff pointed to the area on his back. <u>Id.</u> ¶10. After the plaintiff removed his shirt, Bertzel allegedly examined

---

[1] The complaint contains various spellings for the defendants' lasts names. For example, Bertzel is sometimes spelled as Bretzel, and Romo is sometimes spelled as Romos.

the area and asked about hives on the plaintiff's body. Id. at ¶¶11-13. The plaintiff alleges that Bertzel told him to go to another room where she examined his back more closely. Id. at ¶14. Defendant Romo allegedly entered the room, and Bertzel and Romo looked at the plaintiff's back "differently than to help [the plaintiff's] lower back pain." Id. at ¶17. The plaintiff states that Bertzel told him that she was going to test his skin with heat and while he was lying face down on the table, he felt heat all over his back. Id. at ¶¶18-19. He allegedly felt "a sensation of numbness" followed by "a very cold area on [his] back outside of the rest of [his] back." Id. at ¶¶20, 22. The plaintiff states that he asked Bertzel why his back felt cold, and she responded that she was trying to see something. Id. at ¶¶22-23. Romo allegedly began to press on the plaintiff's back, and the plaintiff says he became worried and asked what was going on. Id. at ¶24. The plaintiff asserts that he felt anxious, started to hyperventilate and became lightheaded. Id. at ¶25. Moments later, the plaintiff allegedly noticed one of the nurses throwing bloody napkins in the garbage can. Id. at ¶26. He says that a few seconds later, he started to feel pain of the "cut/open wound." Id. at ¶28. The plaintiff states that he then felt Romo press harder on his back while Bertzel placed six stitches in his back. Id. at ¶¶29-30.

The plaintiff alleges that he did not know that the defendants would perform a procedure "of a surgical nature" nor did he consent to it. Id. at ¶31. The surgical procedure allegedly caused the plaintiff overwhelming pain and sleep deprivation because he couldn't roll over on his back. Id. at ¶32.

In early March 2025, medical staff allegedly gave the plaintiff diclofenac for his back. Id. at ¶35. The plaintiff states that after he used the medication on his back wound, it started to itch and ooze pus. Id. He says that he filed a complaint on March 20, 2025 for his stitches to be removed. Id. at ¶38. He says they were supposed to dissolve, but they did not. Id.

The plaintiff claims that Bertzel and Romo violated his constitutional rights by "carrying out a surgical procedure outside administrative policy and procedures," by performing a "botch[ed] surgical procedure" that caused the plaintiff physical and emotional distress and injury and by not following up on the plaintiff's stitches to make sure they dissolved. Id. at ¶¶39-41. The plaintiff claims that defendant Nurse Thomas, who was the head of the health services unit (HSU), failed to protect the plaintiff from "lower echelon personnel" acting outside administrative policy and procedures. Id. at ¶42. Finally, the plaintiff claims that defendant Warden Chase failed to institute safety measures for the security of all incarcerated individuals at Redgranite. Id. at ¶43. The plaintiff states that the court has supplemental jurisdiction over his state law claims. Id. at ¶44.

For relief, the plaintiff seeks compensatory damages. Id. at ¶45.

C.    Analysis

"The Eighth Amendment's ban on 'cruel and unusual punishments' obligates prison officials to provide medical care to prisoners in their custody." Sanders v. Moss, 153 F.4th 557, 567 (7th Cir. 2025) (quoting Dean v. Wexford Health Sources, Inc., 18 F.4th 214, 234 (7th Cir. 2021)); see also Estelle v.

Gamble, 429 U.S. 97, 102 (1976). A prison official's "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. Sanders, 153 F.4th at 567 (quoting Estelle, 429 U.S. at 104). The plaintiff must satisfy two prongs to prove a deliberate indifference claim. First, he must show that he suffers from an "objectively serious medical condition." Id. (quoting Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*)). The plaintiff also must establish that the prison official acted with a "sufficiently culpable state of mind." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)); see also Wilson v. Seiter, 501 U.S. 294, 297 (1991). "A prison official has a sufficiently culpable state of mind when the official 'knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk.'" Sanders, 153 F.4th at 568 (quoting Farmer, 511 U.S. at 834).

The plaintiff alleges that after he sought medical care for his back pain, Bertzel and Romo examined him and then gave him six stitches in his lower back in violation of institution policy and procedures. The plaintiff has not stated a claim based on allegations that Bertzel and Romo acted contrary to institution policy by giving him six stitches. Section 1983 protects against *constitutional* violations; it does not protect against violations of prison regulations or policies. Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017); see Hunter v. Mueske, 73 F.4th 561, 567 & n.1 (7th Cir. 2023) (rejecting argument that violation of prison policy, on its own, violated Eighth Amendment).

6

The plaintiff asserts that the "surgical procedure" was "botched," although it is not clear why he believes it was botched. The plaintiff does not say what condition he had. He says that he was sore after the treatment and that he lost sleep because he couldn't sleep on his back, which was his usual sleeping position. But it is reasonable that the plaintiff's back would be sore after receiving stitches. The medical care the plaintiff allegedly received from Bertzel and Romo included Bertzel moving the plaintiff to a different exam room to more closely examine his back followed by Bertzel and Romo examining the plaintiff's back, asking him about hives, adding heat to his back, causing it to become numb, adding cold to it and administering stitches. Simply put, the plaintiff alleges that Bertzel and Romo treated his medical condition, not that they disregarded it. The plaintiff does not allege, nor do the complaint allegations allow the court to infer, that Bertzel and Romo did not exercise their medical judgment in treating the plaintiff by administering stitches. See Sanders, 153 F.4th at 568 (To prove deliberate indifference, a medical professional's treatment decision "must be such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment."). The plaintiff has not stated an Eighth Amendment claim against Bertzel and Romo.

The plaintiff alleges that he did not consent to the treatment "of a surgical nature" that he received from Bertzel and Romo. He says that he did not consent to receiving stitches and he describes not knowing what was going

7

on during the treatment despite asking Bertzel and Romo what they were doing. Incarcerated individuals have a Fourteenth Amendment right to informed consent. Knight v. Grossman, 942 F.3d 336, 342 (7th Cir. 2019) ("The right to refuse medical treatment carries with it an implied right to the information necessary to make an informed decision about whether to refuse the treatment. Without crucial information about the risks and benefits of a procedure, the right to refuse would ring hollow."). To establish a claim for denial of informed consent, a plaintiff must prove that "(1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to the prisoner's right to refuse treatment, and (3) if the prisoner had received the information, he would have refused the treatment." Id. at 343-44. If the plaintiff successfully establishes these three elements, the courts are to balance the right to informed consent against the relevant state interests. Id. at 344. Construing his claims liberally, the court concludes that the plaintiff may proceed on a Fourteenth Amendment claim against Bertzel and Romo for giving him stitches without his consent.

The plaintiff alleges that Chase and Thompson are liable based on their positions as warden and manager, respectively. Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. Burks v. Raemisch, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. Hildebrandt v. Ill. Dep't of Nat. Res., 347 F.3d 1014,

1039 (7th Cir. 2003). As for supervisors, the personal responsibility requirement is satisfied if the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent. Id. In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995)). The plaintiff does not state a claim against Chase and Thompson because he does not allege that they had any involvement in the events described in the complaint. The court will dismiss them.

Finally, the plaintiff references state law claims but he does not mention any specific state law claims. The court cannot conclude that the plaintiff has stated a claim for violation of state law.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Angela Thompson and Daisy Chase.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Nurse Bertzel and Nurse Romo. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty (60) days.

9

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$331.01** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Redgranite Correctional Institution, where the plaintiff is confined.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all individuals incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

10

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 14th day of July, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

11